UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:16-cr-00179 |
| TREMAYNE HORTON, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Tremayne Horton's Motion for Compassionate Release (Doc. Nos. 50, 54, and 70), which the Government opposes, is ripe for decision. (Doc. Nos. 59, 61, 71, 72, 74, and 76). Mr. Horton, who is thirty-three years old, moves for compassionate release because of asthma that puts him at a high risk for COVID-19 complications. (Doc. No. 54 at 1).

In January 2017, Mr. Horton pled guilty to: 1) possessing with intent to distribute 500 grams or more of cocaine, and 2) carrying a firearm during and in relation to a drug trafficking crime. He was sentenced to 78 months imprisonment. (Doc. No. 48). He has served about 50 months of this sentence and has a release date in May 2022.

Dr. Maharaj Tomar, the medical officer overseeing FCI Forrest City Low, where Mr. Horton is assigned, confirms that he has "moderate persistent allergic asthma." (Doc. No. 71-1 at 2). His asthma is controlled with inhalers: a twice daily steroid inhaler and an Albuterol inhaler "as needed." (Doc. No. 59-3 at 97, 106–07). Those inhaler prescriptions are active through the end of this year. (Id. at 107). He uses the Albuterol inhaler when he exercises. (Id. at 59). He has no nighttime asthma symptoms. (Id.).
Case 3:16-cr-00179   Document 82   Filed 10/19/20   Page 1 of 5 PageID #: 449

Although asymptomatic, Mr. Horton tested positive for COVID-19 and was placed in isolation on May 4, 2020. (Doc. Nos. 59-3 at 106; 71-1 at 1; 78 at 13). On June 11, 2020, Mr. Horton was returned to the general population. (Doc. No. 78 at 1). After his COVID-19 recovery, Dr. Tomar reports that Mr. Horton's asthma remains well-controlled, he has no diminished lung function or increased risk for future infections, and has an "excellent" prognosis for recovery. (Doc. No. 71-1 at 2).

However, Mr. Horton complained about shortness of breath on August 4, 2020, (Doc. No. 74-1), and previously on May 29 and June 1, 2020. (Doc. No. 70 at 7–9). When treated by medical staff on May 29 and June 1, his lungs were clear, and he had no acute distress. (Id.). There are no sick call requests from August 4 in the medical records.

## Exhaustion

On June 4, 2020, the Court found that Mr. Horton had not exhausted available administrative remedies, (Doc. No. 62), as required. United States v. Alam, 960 F.3d 831, 833 (6th Cir. 2020). In a June 9, 2020 letter, his counsel made a request for compassionate release to the warden. (Doc. No. 63-1). The warden responded more than 30 days later, on July 21, 2020, denying the request. (Doc. No. 73-1 at 1).

The Government argues that a request for compassionate release must be made by the inmate and not the inmate's lawyer. (Doc. No. 71 at 7–8). The Court disagrees. First, "[t]he Bureau of Prisons [("BOP")] processes a [compassionate release] request made by another person on behalf of an inmate in the same manner as an inmate's request." 28 C.F.R. § 571.61(b). Second, a lawyer is the client's agent, so when a lawyer makes a request to the BOP, it is as if the defendant himself requested compassionate release. New York v. Hill, 528 U.S. 110, 115 (2000). Third, the purpose of exhaustion is to give the warden the first opportunity to consider an inmate

2

compassionate request. Alam, 960 F.3d at 835. It makes no meaningful difference who writes that letter to alert the warden—the defendant, a family member, or a lawyer—because the warden is on notice to review defendant's candidacy for compassionate release either way, achieving the purpose of exhaustion.

## Serious Physical or Medical Condition

A Court is authorized to grant compassionate release and reduce a defendant's sentence if, after "considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The "medical condition of the defendant" may be an "extraordinary and compelling reason" for relief if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A)(ii).

Mr. Horton asserts that he qualifies for compassionate release because he suffers from "severe asthma." (Doc. No. 54 at 8). However, the medical records reflect that he was diagnosed with "moderate persistent" asthma that is controlled through medication. (Doc. No. 71-1 at 2). This is apparent because his asthma was not exacerbated after his COVID-19 infection, and because he only requires the Albuterol inhaler when he exercises. (Doc. No. 59-3 at 59, 97; Doc. No. 71-1 at 2); see United States v. Newton, No. 18-CV-20483, 2020 WL 4592891, at *3 (E.D. Mich. Aug. 11, 2020) (denying compassionate release to defendant requiring an Albuterol inhaler when exercise induced his asthma). He is able to provide self-care while in prison. (Doc. No. 59-3 at 59). Mr. Horton's asthma does not qualify as a "serious physical or medical condition" because

it can be adequately managed in prison and "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. DeMille, ___ F. Supp. 3d ___, 2020 WL 2992190, at *4 (D. Or. June 4, 2020) (internal quotations omitted); United States v. Alaniz, No. 15-cr-00329-DAD-BAM, 2020 WL 4059581, *5 (E.D. Cal. July 20, 2020) (denying relief to defendant claiming he suffered moderate to severe asthma).

Mr. Horton argues that his asthma becomes a serious illness because of COVID-19. (Doc. No. 70 at 2, 7). Indeed, the Centers for Disease Control and Prevention agrees that moderate asthma "may" increase risk for illness from COVID-19. Ctrs. for Disease Control and Prevention, People With Certain Medical Conditions (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Here, Mr. Horton has already been infected and recovered from COVID-19. There is no medical documentation that he suffered any diminished long-term lung function or that his ability to provide self-care in prison has been impaired. (Doc. No. 71-1 at 2); United States v. Gallegos, No. 4:17-cr-568, 2020 WL 3403032, *2–3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility . . . .'"). To the extent that he asserts an increased risk of contracting it again, (Doc. No. 54 at 15), the current medical science is unclear whether he could contract COVID-19 a second time, (see Doc. No. 59 at 17); United States v. Buford, No. 05-80955, 2020 WL 4040705, at *5 (E.D. Mich. July 17, 2020); United States v. Epstein, No. CR 14-287-1 (FLW), 2020 WL 2537648, at *6 (D.N.J. May 19, 2020) ("To the extent Defendant bases his motion on his apprehension of being infected with COVID-19 for a second time, the risk is purely speculative.").

Based on the record before the Court, Mr. Horton does not have a "serious physical or medical condition" from which he cannot provide self-care. U.S.S.G. § 1B1.13 n.1(A)(ii). The same result would obtain if the Court applied the "other reasons" category under U.S.S.G. § 1B1.13 n.1(D) (Doc. No. 54 at 10–11) because he would still need to show that his medical condition coupled with the COVID-19 pandemic presents a serious risk to his health. <u>United States v. Duncan</u>, ___ F. Supp. 3d ___, 2020 WL 4669944, at *9 (M.D. Tenn. Aug. 12, 2020).

An appropriate order will enter

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE